Thank you, Your Honor. Your Honor, I first of all want to say I want to reserve two to three minutes for rebuttal. Okay. You're Mr. Ammon? Yes, Your Honor. I'm Barry Ammon here for plaintiff and appellant June Foster. Okay. Mr. Ammon, go ahead. Thank you, Your Honor. There are several very critical points that this appeal addresses. One critical issue that the appeal addresses is the general jurisdictional issues raised by Judge Fogel in his decision. His decision appears to be based on a bankruptcy court ruling in the Southern District of New York. And in that bankruptcy case, in fact, there was no discharge of June Foster's claim. Secondly, the bankruptcy court had no authority to discharge the non-monetary aspect of her claim. And Foster had claims for Well, I really think there are tougher issues than that one, though I think that may be a tough one. But I think she's got other problems that are bigger than that, in that when the order I guess I'm trying to figure out why it is the court had any jurisdiction at all. Well, Your Honor, the court clearly had jurisdiction There was a motion for reconsideration that was issued. The jurisdictional grounds were addressed. And the court said no jurisdiction. Only a defendant can remove the case to federal court. She waited for five years to ask for removal. There was no action pending in state court. Those are big issues before you ever get to bankruptcy. Your Honor, may I address those issues? Sure. Okay. For one, yeah, I understand that they are important issues. But the issue of removal, the way defense raised it here is a red herring. Okay. Ms. Foster, at the time of the what she called a removal, was pro per. Okay. She, at the time of the removal, was simply stating she had an independent cause of action for violation of 42 U.S.C. 1983, which is total federal jurisdiction. That's complete and total federal jurisdiction. It's clear that there's federal jurisdiction. She could have brought that in the state court, couldn't she? Well, it is basically a federal claim. I understand that, but having been a state district judge, I presided over a lot of those 1983 claims. And so I know you can raise them. Why didn't she? Well, she felt strongly that the federal court would be a more appropriate court. But you full well know that you're an attorney, and she wasn't that she either had to file that in the state court or she'd waive it. Well, this not necessarily because this is an ongoing violation, Your Honor. In other words, the 1983 claim that may have been present in 2001 or 2002 at the time the Superior Court case was filed, okay, was not exactly the same as the ongoing injury. Ms. Foster was wrongfully terminated by KNTV for absolutely no good reason. For reasons of basically race here, as it's very clear from the record, if we're going to the merits, that she was, in fact, discriminated against because she was an African-American woman. She was told she was the worst news writer that KNTV had ever hired. She had a jury trial on those issues, though, didn't she? Your Honor, but only in state court. Was she entitled to a second jury trial on those same issues in federal court? Your Honor, she never had a jury trial on the 1983 claim. But the issues are the same, are they not? Not completely. But that's where Rooker-Feldman comes in, does it not? No. Rooker-Feldman is not applicable in this case because we have the ongoing civil rights violation. We have the fact that in this case of civil rights, okay, that Rooker-Feldman is not necessarily applicable for all the reasons we've stated in both our opening brief and in our reply brief, that there's numerous exceptions to the Rooker-Feldman doctrine which we cited, and we believe that those exceptions come into this case, that, in fact, these are not the same claims that there were. Indeed, there was the ongoing injury that she suffered, okay, the ongoing injury, the wrongful termination. Plus, there was actually even another position she applied for subsequent to the state court filing that she was also denied, again, for no good reason. So, no, we don't, under the circumstances of this case, or the cases we cite, the laundertongue laboratories of the University of Illinois Foundation and others, manufactured home communities, the city of San Jose and so on, that in this case doesn't bar jurisdiction. We are also, remember, there was never a final determination by the California Supreme Court on her matter, and that also mitigates the Rooker-Feldman doctrine. In our March 21st letter to the court, our supplemental briefing, we cited, I believe, I thought that the California Supreme Court did deny a petition for review on August 18th, 2006, and in that issue, in that particular case, or appeal, if you will, is the first time the plaintiff ever raised any of the federal constitutional issues. Well, Your Honor, technically they denied it. Bottom line is she didn't say anything about federal issues when she went to state court. They had a trial, as my good colleague has pointed out. She could have raised them, which you agreed with me she could have, and then she appeals it to the California Court of Appeal, doesn't put anything in about federal issues. Then when she goes to the California Supreme Court on a petition for review, she raises constitutional issues for the first time under the federal constitution, and they deny the appeal. But, Your Honor, the California Court of Appeal, again, the Supreme Court did not do anything on the merits other than deny a petition. No, they didn't do anything. They denied. They denied a petition for review, and since the court only takes something like two, three, at most 6 percent of the cases submitted for review, to review, because it's a very busy court, as you know, dealing with, in large part, about 40 percent of the cases they deal with are capital punishment cases, okay? So they cannot take that many civil cases, and they chose not to take the review. It's a seven, as you know, it's a seven-justice court in a state of 35 million people. So that is, I'm sure, a factor that the court determined. But there was no determination on the merits. And we cited the Blagojevich case, which makes it clear that unless there's a final determination by a state supreme court on an issue, that effectively the case has not been finally determined by the state court system. And so in this case, Ms. Foster clearly could not get a final adjudication from the state court system, as is very clear in that recent case that was just decided, I believe, this year, that we cited in our letter, supplemental letter of March 21st. Let me ask you a question. Yes, Your Honor. If, in fact, I don't buy any of this, what would you amend in district court to make your claim go forward? Your Honor, Ms. Foster would definitely amend to allege the ongoing injury, the ongoing violation of civil rights, according to 42 U.S.C. 1983. So that's your best amendment you have? Well, there may be others. Well, it seems to me that if I'm going to suggest that it's not futile, I've got to come up with something you're going to amend that you're going to tell me about. Well, Your Honor, the bottom line here is that she's suffering from the ongoing injury of not being reinstated to her job. Okay. She's gone. She has a master's degree in journalism from Northwestern University. Okay. She was terminated as a result of various racially provoked incidents. Even the state court found that there was an adverse determination. Okay. Here. Even though she wasn't granted damages, they found that the termination was adverse. Okay. She never got the justice in the state courts. But she would amend to include that. But she would probably also amend to ---- If there is no jurisdiction in the state court at all, is there any way she can amend? If there's no jurisdiction in the state court. If there's no jurisdiction in the federal court to bring the state claims at all, is there any way she can amend? Well, I would submit that there is the independent 1983 claim. I would submit that there's jurisdiction in the federal court to consider the civil rights violations and the special circumstances of this case. And we've cited cases here about the lack of applicability of certain collateral estoppel and re-adjudicat issues, i.e., the Ariyoshi case that we cited. I mean, excuse me. Yeah, the Ariyoshi case. So, yes, there is authority here to go to federal court because the ongoing injury in the state court, the ongoing injury was never really dealt with. Okay. The recent injury, the recent failure to hire Ms. Foster when she applied for another position in early 2008 has not been addressed. That's certainly a new claim that it would be amended to include, Your Honor. Yes. So definitely, that would actually be an additional federal employment discrimination claim, which could also be a declaratory relief claim because, although this isn't exactly bankruptcy, your question was related to bankruptcy, but bankruptcy cannot discharge a declaratory relief claim. Okay. And they're contending that they can't, that apparently that they can. There's no way any bankruptcy order can discharge a declaratory relief claim. And there was clearly jurisdiction, Your Honor, by Judge Fogel. There was jurisdiction. Mr. Ammon, we've heard your argument. I gave you a minute and almost two minutes too much. Let's hear what the defense has to say. Okay, Your Honor. Good morning. May it please the Court. Nancy Pritikin, appearing for KNTV television and Granite Broadcasting. Your Honors, all of Ms. Foster's claims were finally adjudicated in the State court. Some of the claims were dismissed on summary judgment, and the remaining claims were found against her by a jury. She appealed the judgment against her to the California Court of Appeal, raising claims of alleged procedural errors in the trial court, a claim of no substantial evidence against her. The California Court of Appeals analyzed every one of her claims that she was not given a fair trial and found against her. And the California Supreme Court exercised its discretion not to review the court of appeal decision. And it was only after that that Ms. Foster tried to remove her concluded State court proceedings to the U.S. District Court in an attempt to relitigate the exact same assertions of purported procedural errors and her underlying termination claim that the California Court of Appeal had already decided against her. And it doesn't matter if that was brought as an original action or as a removal. The district court had no jurisdiction. Because as the district court correctly found, it lacks subject matter jurisdiction, which can come up, by the way, as Your Honors know, at any time, because, first of all, Ms. Foster can't remove her own claim. And second, under Worker-Feldman, district courts lacked jurisdiction to review State court adjudications. Only the United States Supreme Court can do that. And Ms. Foster never sought any timely review in the United States Supreme Court. And all of the any errors by the State court of appeal that infringed on Federal rights under 1257 had to go to the United States Supreme Court. The district court was without subject matter jurisdiction. If Your Honors have any questions, I can address them. I don't think we have any questions. Thank you very much. Thank you. Case 10-15031, Foster v. KMTV, television, is submitted. Could I have a minute with Bob? Well, I gave you two minutes extra. Okay, just a minute. I mean I gave you your regular ten, plus I gave you two extras. So I think we'll go on. Thank you very much, though. All right, thank you.
judges: Collins, Noonan, Smith N. R.